UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
KALEEL FELDER,

                Plaintiff,

         - against -

PHILLIP ARENA, *et al.*,

                Defendants.

------------------------------------------------------------x

**MEMORANDUM AND ORDER**
2:25-CV-0073 (PKC) (SIL)

PAMELA K. CHEN, United States District Judge:

*Pro se* Plaintiff Kaleel Felder brings this 28 U.S.C. § 1983 action against Defendants Dr. Phillip Arena ("Dr. Arena"), RN Johanna Wells ("Nurse Wells"), and John and Jane Doe Defendants ("Doe Defendants"), alleging that they were deliberately indifferent to his medical needs, in violation of the Fourteenth Amendment, by prescribing him a medication to which he is allergic and failing to treat his adverse reaction to the medication.  Defendants now move to dismiss Felder's Complaint in its entirety.  For the following reasons, the Court denies their Motion.

**BACKGROUND[1]**

I.     **Factual Background**

On or about November 19, 2024, Plaintiff, while incarcerated pre-trial at Riverhead County Jail,[2] went to Dr. Arena, a dentist, for gum and tooth pain.  (Compl., Dkt. 1, at 4; Pre-Motion

---

[1] The following facts are drawn from Plaintiff's Complaint and Plaintiff's verbal amendment of his Complaint at the December 30, 2025 Pre-Motion Conference.

[2] It appears undisputed that Plaintiff "was a pre-trial detainee at the time these events occurred." (*See* Defs.' Mot. for a Pre-Motion Conference, Dkt. 36, at 2 (stating that, though not explicitly stated in Plaintiff's Complaint, "it is believed he was a pre-trial detainee at the time these events occurred"); Compl., Dkt. 1, at 3, 5 (filing Complaint from Riverhead County Jail); Pre-

Conference Tr. ("Tr."), Dkt. 46, at 6:8–7:5.)  Plaintiff is allergic to penicillin, and this allergy is noted in his medical records.  (*See* Compl., Dkt. 1, at 4; Tr., Dkt. 46, at 7:22–8:12.)  Without looking up Plaintiff's records, Dr. Arena prescribed Plaintiff penicillin.  (*See* Compl., Dkt. 1, at 4; Tr., Dkt. 46, at 9:22–10:7.)

After taking the medication, Plaintiff's chest began to hurt "exstreamly [sic]," his "heart began to slow down in beats," and his throat began to burn "down to [his] stomach."  (Compl., Dkt. 1, at 4.)  He also felt "tightness around [his] heart . . . like a strain" and "los[t] breath for a second."  (Tr., Dkt. 46, at 5:8–12.)  Plaintiff's skin became bumpy, and his "whole body began to itch."  (Compl., Dkt. 1, at 4.)  Plaintiff continued to take the medication, but the symptoms kept getting worse.  (Tr., Dkt. 46, at 11:12–21.)  Eventually, Plaintiff approached Nurse Wells and asked why he was having the "itchiness and the tightness in [his] chest."  (*Id.* at 5:2–5, 12:25–13:5.)  Nurse Wells told him that he "needed to eat with the medication."  (*Id.* at 5:5–6, 12:2–5.)  Plaintiff informed her that he had already eaten, (*id.* at 5:6–7, 12:5), and asked, "what are you guys prescribing me?"  (*Id.* at 11:25.)  Nurse Wells informed him the pill was penicillin.  (*Id.* at 11:25–12:1.)  Plaintiff told Nurse Wells that he was allergic to penicillin.  (*Id.* at 12:1–2.)  Nonetheless, Nurse Wells "still gave [the pill] to [him]."  (*Id.* at 12:2, 12:25–13:5.)  Plaintiff refused to take the medication and returned to his cell.  (*Id.* at 12:2–7.)

Shortly after, Plaintiff felt that he could not breathe.  (*Id.* at 12:7–9.)  Plaintiff requested that a corrections officer get the sergeant, and told the sergeant, "my chest is really tight, you know, I am itching and I can't breathe. I have a burning sensation."  (*Id.* at 12:9–13.)  The sergeant brought Plaintiff "down to medical."  (*Id.* at 12:14–15.)  At medical, Plaintiff informed non-

---

Motion Conference Tr., Dkt. 46, at 8:15–17 (describing recordkeeping practices at Riverhead County Jail).)

defendant Nurse Luedell Grieger ("Nurse Grieger")[3] of his symptoms, and she prescribed him another antibiotic, clindamycin. (*See id.* at 13:7–18.)  After taking that pill, Plaintiff stated that he "still fe[lt] like when [he] took the first pill" of penicillin. (*Id.* at 13:20–23.)  Nurse Grieger told Plaintiff to "give it a couple of days." (*Id.* at 13:25–14:1.)  At that point, another nurse came in and said, "you[] guys are prescribing penicillin, [but] he is allergic to it." (*Id.* at 14:1–3.)  "And that's when [the nurse] gave [him] the look like, . . . *they messed up, they gave you something that they w[eren't] supposed to.*" (*Id.* at 14:3–5 (emphasis added).)

A few days after taking clindamycin, Plaintiff "kept feeling the same," and refused all medications. (*Id.* at 14:9–16.)  Petitioner wrote to the medical unit about his continuing symptoms but never received a response. (*Id.* at 16:20–17:5.)  A few days later, he was moved to another facility. (*Id.* at 17:5–7.)

According to Plaintiff, at Riverhead County Jail, "when you take a medication, they check a little box, . . . for the days you take it." (*Id.* at 8:15–17.)  At some point before he was transferred out of Riverhead County Jail, Petitioner asked a nurse to look at his medical records. (*See id.* at 8:13–17.)  When the nurse looked at the records, Plaintiff recalls, "those checks [for penicillin] w[ere]n't there [any] more." (*Id.* at 8:17–18.)  "So it's like they kind of took the record and took that off and then prescribed [him] the new medication and then put that new medication on the record." (*Id.* at 8:18–20.)[4]

---

[3] Although Plaintiff initially named Nurse Grieger as a defendant, at the Pre-Motion Conference held in this case on October 27, 2025, Plaintiff dropped his claims against Nurse Grieger. *See* discussion *infra* at 4.

[4] Plaintiff also alleges that "one of the letters [he] had got from the Eastern District Court says that the record was cut, meaning that [Defendants] tried to cover something up.  So they took half of that, whatever they was prescribing [him] off and made it seem like they were giving [him] [clindamycin]." (Tr., Dkt. 46, at 8:21–25.)  However, Defendants clarify that Plaintiff was

## II.    Procedural Background

On January 2, 2025, Plaintiff filed his Complaint against John and Jane Doe Defendants, describing the incident with his medication and requesting compensation for his pain and suffering. (Dkt. 1.)  Plaintiff requested—and was granted—leave to proceed *in forma pauperis*.  (Dkts. 6, 7, 9, 12, 13; 03/21/2025 Dkt. Order.)  On June 20, 2025, and September 16, 2025, the Defendants were identified as Dr. Arena, Nurse Grieger, and Nurse Wells.  (Dkts. 20, 25.)

On October 27, 2025, Defendants moved for a Pre-Motion Conference ("PMC") in anticipation of their motion to dismiss Plaintiff's Complaint.  (Dkt. 36.)  At the PMC, Plaintiff verbally amended his Complaint and clarified that he was asserting deliberate indifference claims against three Defendants: Dr. Arena, Nurse Wells, and the Doe Defendants.  (*See generally* Tr., Dkt. 46.)  Plaintiff also agreed to drop his claims against Nurse Grieger.[5]  (*Id.* at 26:4–12.)  With regard to the remaining Defendants, Plaintiff alleged that: (1) Dr. Arena was deliberately indifferent for prescribing a medication to which Plaintiff is allergic; (2) Nurse Wells was deliberately indifferent for instructing Plaintiff to continue taking the medication despite his allergic reaction to it; and (3) the Doe Defendants were deliberately indifferent for failing to respond to his medical request despite his allergic reaction.  (*Id.* at 15:15–18:15, 26:12–20.)

On January 28, 2026, Defendants filed their motion to dismiss.  (*See* Defs.' Mot. to Dismiss, Dkt. 44; Defs.' Mem. in Supp. Mot. to Dismiss ("MTD"), Dkt. 44-1.)

---

referring to "the letter [Defendants] sent to [Magistrate] Judge Locke . . . that just in the scanning of his medical records, that the left side, left margin, was cut off."  (*Id.* at 23:14–18.)

[5] The Court therefore dismisses Nurse Grieger from this action.

4

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face where it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In reviewing a complaint for failure to state a claim, the Court accepts as true all factual allegations and draws from them all reasonable inferences, while disregarding "conclusory allegations or legal conclusions couched as factual allegations." *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 91 (2d Cir. 2021) (quoting *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020)). Furthermore, "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal citations omitted), and read to "raise the strongest arguments they suggest," *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007)).

## DISCUSSION

### I.     Plaintiff's Deliberate Indifference Claims

#### A.     Legal Standard

Plaintiff's claim for inadequate medical treatment is based on the Due Process Clause of the Fourteenth Amendment because the events occurred while Plaintiff was detained pending arraignment and trial. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight[h] Amendment."); *Taranto v. Putnam Cnty.*, No. 21-CV-2455 (KMK), 2023 WL 6318280, at *10

(S.D.N.Y. Sep. 28, 2023) (same).[6]  To state a claim for inadequate medical treatment under the Due Process Clause, Plaintiff must establish that Defendants were "deliberately indifferent" to his "serious medical needs." *Charles v. Orange County*, 925 F.3d 73, 85 (2d Cir. 2019) (collecting cases).  That requires pleading two elements: that (1) Plaintiff had a sufficiently serious medical need; and (2) "Defendants acted with deliberate indifference" to that need.  *See id.* at 86 (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Darnell*, 849 F.3d at 29); *see also Mallet v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 126 F.4th 125, 132 (2d Cir. 2025).

### 1.    Serious Medical Need

There is no clear rule delineating when a plaintiff's medical needs are sufficiently "serious."  *See Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2003) ("[I]t is difficult to formulate a precise standard of 'seriousness' that is adequately sensitive (in the sense of capturing those medical conditions properly within the realm of [constitutional] concern) yet appropriately specific (*i.e.*, excluding those conditions that are not)." (citation modified) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997))).  Thus, "the relevant 'medical need' can only be identified in relation to the specific factual context of each case," and "the severity of the alleged denial of medical care should be analyzed with regard to all relevant facts and circumstances."  *Id.* (citing *Chance v. Armstrong*, 143 F.3d 698, 702–03 (2d Cir. 1998)).

---

[6] In contrast, deliberate indifference claims by individuals detained post-conviction are governed by the Eighth Amendment's Cruel and Unusual Punishments Clause.  *See Darnell*, 849 F.3d at 29.  A pre-trial detainee's rights under the Fourteenth Amendment are "at least as great as the Eighth Amendment protections available to a convicted prisoner," *id.* (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)), if not greater, *see id.* at 35 (explaining that "[a] pretrial detainee may not be punished *at all* under the Fourteenth Amendment," unlike those detained post-conviction (emphasis added)).  While the Court cites to cases from the Eighth Amendment context throughout this discussion, it does so because those cases set forth a standard that serves as a floor below which the protections of the Fourteenth Amendment should not fall.

Where a plaintiff alleges *deprivation* of medical care, only "the severity of the prisoner's underlying medical condition, considered in the abstract," is considered. *See id.* at 185–86. The Second Circuit has explained that "[t]he serious medical needs standard contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Charles*, 925 F.3d at 86 (citing *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)); *Mallet*, 126 F.4th at 132. At other times, however, the Second Circuit has made clear that something less than "extreme pain" or a "degenerative condition" can suffice to meet the legal standard. *See Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003) (vacating a district court's grant of summary judgment on Eighth Amendment deliberate indifference claim because the district court erroneously required plaintiff to show that his facial scar and keloid[7] caused him "extreme pain" or constituted a degenerative condition, and explaining that "[w]e will no more tolerate prison officials' deliberate indifference to the chronic pain of an inmate than we would a sentence that required the inmate to submit to such pain"); *Chance*, 143 F.3d at 702 (considering "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain" (alteration in original) (citation omitted)); *Laurent v. Edwin*, 528 F. Supp. 3d 69, 86 (E.D.N.Y. 2021) (compiling cases).

By comparison, where a plaintiff alleges "inadequacy . . . in the medical treatment given, the seriousness inquiry is narrower." *Butler v. Furco*, 614 F. App'x 21, 22 (2d Cir. 2015) (summary order) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006), *abrogated on other grounds by Kravitz v. Purcell*, 87 F.4th 111 (2d Cir. 2023)). In these situations, serious

---

[7] A keloid is a painful "abnormal overgrowth[] of fibrous tissue that, when triggered by a skin injury, typically extend[s] beyond the location of the original wound." *Brock*, 315 F.3d at 161.

medical need is assessed by looking to the "particular risk of harm faced by a prisoner due to the challenged [provision] of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract." *See Smith*, 316 F.3d at 186; *Butler*, 614 F. App'x at 22 (same). Put otherwise, a court determines whether the plaintiff was actually deprived of adequate medical care, and, if so, whether the inadequacy is sufficiently serious. *See Salahuddin*, 467 F.3d at 279–80; *Jahad v. Holder*, No. 19-CV-4066 (NSR), 2023 WL 1879526, at *5 (S.D.N.Y. Feb. 10, 2023).

2.    Deliberate Indifference

The second element of a deliberate indifference claim is essentially a "*mens rea*," or mental state, requirement. *Darnell*, 849 F.3d at 29. Under the Fourteenth Amendment, this prong requires showing "either that the defendant[] *knew* that . . . the complained of medical treatment would pose a substantial risk to [the plaintiff's] health or that the defendant[] *should have known*" it would pose such a risk. *Charles*, 925 F.3d at 87; *Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021).[8] In other words, a pretrial detainee "need not demonstrate subjective awareness on the part of the [defendant]." *Faulk v. Geraci*, No. 19-CV-5690 (PKC) (VMS), 2022 WL 900673, at *3 (E.D.N.Y. Mar. 28, 2022) (alteration in original) (quoting *Gleeson v. County of Nassau*, No. 15-CV-6487 (AMD) (RL), 2019 WL 4754326, at *11 (E.D.N.Y. Sep. 30, 2019)). But "mere medical malpractice is not tantamount to deliberate indifference." *Charles*, 925 F.3d at 87 (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 107 (2d Cir. 2000)). Rather, a pretrial detainee "must prove that an

---

[8] In contrast, deliberate indifference claims under the Eighth Amendment require showing that the defendant *actually knew* of and disregarded the risk. *See Darby*, 14 F.4th at 128 (contrasting standards under Eighth and Fourteenth Amendments); *Faulk v. Geraci*, No. 19-CV-5690 (PKC) (VMS), 2022 WL 900673, at *3 (E.D.N.Y. Mar. 28, 2022) ("Unlike under the Eighth Amendment, deliberate indifference under the Fourteenth Amendment may be defined objectively, not only subjectively.").

official acted intentionally or recklessly, and not merely negligently." *Faulk*, 2022 WL 900673, at *3 (quoting *Darnell*, 849 F.3d at 36).

Whether a defendant "knew or should have known of the substantial risk of harm . . . is a question of fact." *Charles*, 925 F.3d at 87. Such knowledge can be inferred from circumstantial evidence. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994) ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence[] . . . ."); *see also Brock*, 315 F.3d at 164 ("[E]vidence that the risk was obvious or otherwise must have been known to a defendant is sufficient to permit a jury to conclude that the defendant was actually aware of it.").

**B.     Plaintiff Plausibly Alleges Deliberate Indifference Claims As To All Defendants**

1.     Plaintiff's Claims Against Dr. Arena and Nurse Wells

Liberally construed, Plaintiff alleges that Dr. Arena and Nurse Wells were deliberately indifferent by providing inadequate care, i.e., prescribing him a medication to which he was allergic, despite Plaintiff notifying Nurse Wells of this allergy and despite it being documented in Plaintiff's prison records. Plaintiff also asserts that Nurse Wells denied him adequate care by failing to treat his allergic reaction. For the following reasons, the Court finds Plaintiff has plausibly alleged deliberate indifference against these Defendants.

a.     Serious Medical Need

The Court easily concludes that Plaintiff's allegations—i.e., that Dr. Arena prescribed him a medication to which he is allergic, and Nurse Wells continued to prescribe that medication—constituted inadequate medical care. *See Donohue v. Manetti*, No. 2:15-CV-0636 (PK), 2025 WL 974347, at *18 (E.D.N.Y. Mar. 31, 2025) ("Giving Plaintiff an NSAID despite his medical record reflecting that he was allergic to NSAIDs could constitute a deprivation of adequate medical

9

care . . . ."). The Court also finds that Plaintiff has alleged that this inadequate treatment was sufficiently serious. Plaintiff contends that, after taking the penicillin Dr. Arena prescribed, his chest began to burn and hurt "exstreamly [sic]," (Compl., Dkt. 1, at 4; Tr., Dkt. 46, at 12:12–13), and his heart strained to the point that he felt he could not breathe, (Tr., Dkt. 46, at 5:4–11). Plaintiff describes his whole body becoming itchy and his skin becoming bumpy. (Compl., Dkt. 1, at 4; Tr., Dkt. 46, at 11:16–17.) These symptoms continued, even after Nurse Grieger prescribed Plaintiff clindamycin. (Tr., Dkt. 46, at 12:22–14:17.)

Assuming all facts as true in the Complaint and construing all inferences in Plaintiff's favor, the Court finds that Plaintiff has sufficiently alleged that Dr. Arena and Nurse Wells' inadequate treatment resulted in a condition that caused him extreme pain and placed him in extreme danger. *See Donohue v. Manetti*, No. 15-CV-0636 (JFB) (GRB), 2016 WL 740439, at *2, 8 (E.D.N.Y. Feb. 24, 2016) (finding that plaintiff's allegations of an allergic reaction, including swelling of the neck and suffocation feeling, met objective prong); *Campbell v. New York City*, No. 12-CV-2179 (CBA) (VMS), 2014 WL 4199717, at *5 (E.D.N.Y. May 7, 2014) (finding plaintiff plausibly alleged serious medical need where complaint claimed that defendant "refus[ed] to investigate an identified allergy" and prescribed a "potentially harmful medication," creating a significant risk of serious harm), *report and recommendation adopted*, No. 12-CV-2179 (CBA)

10

(VMS), 2014 WL 4199722 (E.D.N.Y. Aug. 22, 2014).[9]  Accordingly, Plaintiff has sufficiently alleged the first prong of deliberate indifference with respect to Dr. Arena and Nurse Wells.[10]

            b.        Deliberate Indifference

Plaintiff has also sufficiently alleged that Dr. Arena and Nurse Wells acted with the requisite *mens rea*.  As to Nurse Wells, Plaintiff alleges that she *knew* that prescribing penicillin would pose a substantial risk to his health—Plaintiff claims he explicitly told Nurse Wells of his allergy to penicillin, but she continued to give it to him.  *See Perez v. Kuehn*, No. 3:25-CV-1169 (SRU), 2025 WL 3539139, at *4 (D. Conn. Dec. 10, 2025) (finding plaintiff sufficiently alleged that the nurse "was aware of, but ignored, [plaintiff's] serious injury" where plaintiff alerted a nurse to his pain and clearly observable symptoms and the nurse did not provide him with any treatment).  These allegations are "not a novel factual setting for a deliberate indifference claims." *See Chibbaro v. Everett*, No. 3:20-CV-0663, 2022 WL 3589488, at *11 (M.D. Tenn. Aug. 22, 2022) (compiling cases describing defendants' prescription of a medication to which a plaintiff was allergic and defendants' failure to treat the reaction), *report and recommendation adopted*, No. 3:20-CV-0663, 2022 WL 4299715 (M.D. Tenn. Sep. 19, 2022).  Courts have found similar

---

[9] *Yancey v. Robertson*, 828 F. App'x 801 (2d Cir. 2020) (summary order), which Defendants cite to for the proposition that Plaintiff's allergic reaction was not sufficiently serious, (MTD, Dkt. 44-1, at 5), is a summary judgment case that relied on the record medical evidence to dismiss a deliberate indifference claim, and therefore does not govern the outcome here. *Yancey*, 828 F. App'x at 803–04.  Moreover, Plaintiff, unlike the plaintiff in *Yancey*, alleges symptoms more than a mere "inability to sleep," such as chest tightness. *Compare id.* (observing that while the plaintiff admitted to some breathing problems, "no respiratory distress nor complaints of respiratory distress are noted in [plaintiff's] medical records" and plaintiff did not "indicate any serious harm or risk of harm" from his symptoms "other than an inability to sleep"), *with* (Tr., Dkt. 46, at 5:3–12 (describing itchiness, tightness around heart, loss of breath)).

[10] For this reason, the Court also declines to dismiss the case on the basis of qualified immunity.  (*See* MTD, Dkt. 44-1, at 5–6 (arguing that qualified immunity is warranted because Plaintiff did not allege a sufficiently serious condition).)

allegations—a "medical provider's knowing prescription of a medication to which an incarcerated patient is allergic"—to state a claim for deliberate indifference, even under the Eighth Amendment. *See Chibbaro*, 2022 WL 3589488, at \*16 (explaining that a "medical provider's knowing prescription of a medication to which an incarcerated patient is allergic can constitute reckless disregard for an excessive risk of serious harm and, thus, a sufficiently culpable state of mind to support an Eighth Amendment deliberate indifference claim"); *Spann v. Hannah*, No. 20-3027, 2020 WL 8020457, at \*2 (6th Cir. Sep. 10, 2020) (unpublished) (finding a "sufficiently culpable state of mind" alleged where plaintiff alleged that "defendants knew that he was allergic to the medications that were prescribed and administered to him and that they nevertheless proceeded to prescribe and administer these medications" (citation omitted)); *Campbell*, 2014 WL 4199717, at \*2, \*5–7 (finding plaintiff alleged second prong of deliberate indifference where he informed the doctor he was allergic to a medication and the doctor responded, "just take it"); *Estelle*, 429 U.S. at 104 n.10 (listing, as an example of deliberate indifference, a case in which defendants injected prisoner with penicillin despite knowledge that prisoner was allergic to it (citing *Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir. 1974), *cert. denied sub nom. Thomas v. Cannon*, 419 U.S. 879 (1974))).

Although Plaintiff does not allege that he explicitly *informed* Dr. Arena of his allergy to penicillin, Plaintiff has sufficiently alleged facts that Dr. Arena knew or should have known that prescribing penicillin would pose a substantial medical risk to Plaintiff.  In the more demanding Eighth Amendment context, evidence that a substantial risk was "well-documented[] or expressly noted by officials in the past" and "circumstances suggest that the defendant[] . . . had been exposed to information concerning the risk" could "be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk." *Farmer*, 511 U.S. at 842–43; *see also Charles*, 925 F.3d at 87 (applying this principle to Fourteenth Amendment deliberate

12

indifference cases (citing *Farmer*, 511 U.S. at 842)).  Here, Plaintiff alleges that his allergy was documented in his medical records, (Tr., Dkt. 46, at 7:22–8:1), that his allergy was expressly noted by a member of the medical team, such as the nurse who interrupted his appointment with Nurse Grieger, (*id.* at 5:12–15), and that Dr. Arena had access to this information in a computer, (*see* Compl., Dkt. 1, at 4).  Based on this information, it can be reasonably inferred that Dr. Arena knew or should have known of Plaintiff's penicillin allergy.  *See Johnson v. Cnty. of Saratoga*, No. 9:18-CV-0096 (DNH) (DEP), 2018 WL 10910777, at *6 (N.D.N.Y. Apr. 16, 2018) (alleging that failure of defendant to review plaintiff's medical history before administering injection supported inference that defendant "knew of should have known of an excessive risk to plaintiff's health or safety"); *Hill v. Okla. Cnty. Crim. Just. Auth.*, No. CIV-24-1298-D, 2025 WL 2573383, at *3 (W.D. Okla. July 8, 2025) (determining that allegation that penicillin allergy was noted in a medical file supported inference that the defendant dentist "consciously disregarded the risk" by prescribing it), *report and recommendation adopted*, No. CIV-24-1298-D, 2025 WL 2080616 (W.D. Okla. July 23, 2025); *Walthour v. Tennis*, No. 3:CV-06-0086, 2008 WL 318386, at *5 (M.D. Pa. Feb. 4, 2008) (declining to dismiss deliberate indifference claims for similar reasons).  Plaintiff thus has alleged that, by prescribing him with penicillin despite this knowledge, Dr. Arena acted with deliberate indifference.

In an attempt to distinguish from these cases, Defendants seek to rely on Plaintiff's medical records as documents "incorporated by reference" or "integral" to the Complaint; Defendants claim that these records show that Plaintiff was never prescribed penicillin in connection with the events alleged in the Complaint, and was only prescribed clindamycin.  (MTD, Dkt. 44-1, at 6–9.)  Notably, these medical records do not seem to include the records of Dr. Arena.  Even if the Court were to find that these records are incorporated by reference or integral to the

Complaint, it would have to construe all facts in favor of Plaintiff, who alleges that members of the medical team *knew* they "messed up," (*see* Tr., Dkt. 46, at 5:12–16), and that his medical records were altered to remove all references to him being prescribed penicillin, (*see id.* at 8:17–20 (alleging that when he asked a nurse "to go look at [his record], those checks [for penicillin] w[ere]n't there [any] more" and therefore "they kind of took the record and took [penicillin] off and then prescribed [him] the new medication and then put that new medication on the record")).[11] Indeed, the alleged inaccuracy in Plaintiff's medical records, construed in this light, further supports the inference of Defendants' improper motive. *See Crenshaw v. Dep't of Corr.*, No. 24-CV-439 (SFR), 2025 WL 2776975, at *11 (D. Conn. Sep. 25, 2025) (crediting allegation that medical records contained omissions, and compiling cases construing "inaccuracy of medical records, including omissions of significant information from medical records" as supporting "an inference of improper motive for declining care"). Accordingly, the Court declines to dismiss Plaintiff's claims on the basis that he was never prescribed penicillin during the events at issue.

Defendants' next argument—that Dr. Arena and Nurse Wells did not have the requisite *mens rea* because Defendants "put [Plaintiff] on another medication," clindamycin, after he complained of his symptoms, (MTD, Dkt. 44-1, at 4)—is also unavailing. Plaintiff does not allege that Dr. Arena and Nurse Wells had *any other involvement in his care* apart from providing him with medication to which he was allergic. Rather, Plaintiff alleges that after returning to his cell, his chest continued to feel "really tight" and he was "itching and . . . [couldn't] breathe." (Tr., Dkt. 46, at 12:12–13.) Consequently, he asked a corrections officer to get the sergeant and bring him "down to medical." (*Id.* at 12:9–10.) Plaintiff alleges that Nurse Grieger, *not* Dr. Arena or

---

[11] This allegation is separate from Plaintiff's contention that a letter he received related to this instant suit was cut off. (*See* Tr., Dkt. 46, at 8:21–23); *supra* n.2.

14

Nurse Wells, prescribed clindamycin, and even then, his symptoms continued—and, as noted *infra*, were ignored. (*Id.* at 5:10–6:5, 13:7–14:17.)  In short, the actions of others in responding to Plaintiff's symptoms cannot eliminate the deliberate indifference of Dr. Arena and Nurse Wells in administering the medication in the first place.  *See Jones v. Brunelle*, 164 F.3d 618 (2d Cir. 1998) (summary order) ("The fact that the prisoner eventually received some treatment does not automatically defeat his claim that prison officials acted, or failed to act, with deliberate indifference in excessively delaying the provision of care." (citing *Hemmings v. Gorczyk*, 134 F.3d 104, 108-09 (2d Cir. 1998) (per curiam)); *Burris v. Dezelic*, No. 14-CV-5540 (PKC) (ARL), 2026 WL 865838, at *6 (E.D.N.Y. Mar. 30, 2026) (same); *Ramos v. Artuz*, No. 00-CV-0149 (LTS) (HBP), 2001 WL 840131, at *12 (S.D.N.Y. July 25, 2001) (reaching a similar conclusion by reasoning that, "there can be no serious dispute that if a prison physician accurately diagnosed an inmate as suffering from acute appendicitis and treated the condition with nothing but aspirin, the physician would be guilty of deliberate indifference").

> 2.      Plaintiff's Claims Against the Doe Defendants

Plaintiff has sufficiently alleged deliberate indifference against the Doe Defendants for their actions (or inactions) *after* he was prescribed clindamycin.[12]  Plaintiff alleges that, after taking clindamycin, he continued to feel the same symptoms and wrote to the medical unit for treatment. (*See* Tr., Dkt. 46, at 16:20–17:4.)  But the Doe Defendants never responded.  (*Id.* at 17:5–7.)  A few days later, Plaintiff alleges, he was transferred to another facility.  (*Id.*)  The Court finds that, in light of Plaintiff's prior treatment for his allergic reaction and documented allergy, Plaintiff's Complaint supports the allegation that the Doe Defendants should have been aware of Plaintiff's

---

[12] Defendants' motion does not address these allegations—and, indeed, seems to wholly ignore Plaintiff's orally-amended Complaint.  (*See* MTD, Dkt. 44-1, at 1–2.)

penicillin allergy and his severe reaction to it during the episode at issue.  Accordingly, Plaintiffs'

allegation that the Doe Defendants ignored his medical request for his ongoing symptoms[13] for

*several days* plausibly states a claim for deliberate indifference.  *See Warren v. City of New York*

*Dep't of Corr. Med. Staff*, No. 17-CV-1125 (PKC) (LB), 2021 WL 1163105, at *2, *9 (E.D.N.Y.

Mar. 26, 2021) (finding genuine dispute of material fact as to deliberate indifference where doctor

failed to respond to Plaintiff's reports that his treatment for a severe asthma attack was not working

and that he felt like he was going to die); *cf. Martinez v. City of New York*, 564 F. Supp. 3d 88,

105 (E.D.N.Y. 2021) ("[G]iven Ms. Martinez's cries of pain, requests for medical treatment, and

visible injuries, [a trier of fact could find] defendants' delay in providing care amounted to

deliberate indifference." (citing *Warren*, 2021 WL 1163105, at *9)).

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is DENIED, but Defendant

Grieger is dismissed from this case.

SO ORDERED.

/s/ *Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: May 14, 2026
       Brooklyn, New York

---

[13] As noted *supra*, the Court finds these symptoms are sufficiently serious medical needs.